# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PHILIP KURLANDER, M.D. and
BAKER HILL HOLDING, a New York
limited liability company,

      Plaintiffs,

v.                                                    Case No. 8:19-cv-00644-T-02CPT

ROBERT R KAPLAN, ROBERT R.
KAPLAN, JR., LEO KIELY, SCOTT MUSIL,
BILL FIELDS, and HC GOVERNMENT
REALTY TRUST, INC., a Maryland
Corporation,

      Defendants.

_____/

## ORDER

      This matter comes to the Court on Defendants' Motions to Dismiss Plaintiff's

Complaint from Robert R. Kaplan and Robert R. Kaplan, Jr. (collectively "the

Kaplans"), Leo Kiely, Scott Musil, and Bill Fields (collectively, the "Independent

Directors"), and HC Government Realty Trust, Inc. ("HC REIT"). Dkts. 31, 32, 33.

Plaintiff has filed oppositions in response, Dkts. 42, 43, 44, to which Defendants

have replied, Dkts. 48, 49, 50. The Court took extensive argument from counsel at a

hearing on these matters on August 7, 2019. The Court abstains on Count I under the

*Burford* doctrine, and grants the motions to dismiss on Counts II and III without prejudice.

## BACKGROUND

For purposes of this order, the Court accepts as true the facts alleged in the Complaint. Dkt. 1. In 2010, Edwin Stanton formed a company, later called Holmwood Capital, LLC, ("Holmwood Capital") to invest in real estate. *Id.* ¶¶ 19. Thereafter, Stanton reached out to his attorney and friend, Mr. Kaplan Jr., to discuss the company. *Id.* ¶ 20. It was agreed that Mr. Kaplan Jr. and his father, Mr. Kaplan, both members of the law firm Kaplan Voekler Cunningham & Frank, PLC ("Law Firm") would invest nominal funds and legal services for the venture. *Id.* ¶¶ 20-22.

To seek additional funding for the company, Kaplan introduced Holmwood Capital to Dr. Kurlander, a surgeon and citizen of New York. Dkt. 1 ¶ 1, 22. Dr. Kurlander also owns and controls Plaintiff Baker-Hill, a New York limited liability company. *Id.* ¶ 2. On May 25, 2012, Plaintiffs provided mezzanine financing as a lender and, at the end of 2012, became equity investors in Holmwood Capital with 63% ownership. *Id.* ¶¶ 22-23.

Over the next several years, Holmwood Capital acquired seven commercial properties. *Id.* ¶ 28. Meanwhile, the Kaplans, Mr. Stanton (through his company, Stanton Holdings), and Plaintiffs formed an independent management company

called Holmwood Capital Advisors, LLC ("HC Advisors"), with each owning 25%. *Id.* ¶ 29. The Kaplans continued to perform related legal work, including the preparation of organizational documents for Holmwood Capital and HC Advisors. *Id.* ¶¶ 27, 30.

The Kaplans "insisted" that to obtain additional financing a new entity should be formed to take advantage of "Regulation A," which allows for small business entities to raise capital without the restrictions of publicly listed companies. *Id.* ¶ 31. Dr. Kurlander, Mr. Stanton, and the Kaplans and Law Firm thus formed HC Holdings and HC REIT, which was initially held about equally by each of the Kaplans, Mr. Stanton, and Dr. Kurlander. *Id.* ¶ 32. HC REIT was the general partner of the operating partnership, HC Holdings, with Holmwood Portfolio Holdings, LLC and Holmwood Capital, LLC as limited partners. *Id.* ¶ 33. HC REIT is a Maryland corporation.

Though Mr. Stanton and Plaintiffs had expressed concerns about losing control, they ultimately agreed with the Kaplans for HC REIT to have a board of directors with four independent directors and Mr. Kaplan, Dr. Kurlander, and  Mr. Stanton. *Id.* ¶¶ 34-35. The Kaplans represented the independent directors would respect the preexisting management agreement between HC REIT and HC Advisors. *Id.* ¶ 35. Mr. Stanton also served HC REIT as the chief executive officer,

Mr. Kaplan, Jr. as the president, Mr. Kaplan as the secretary, and Dr. Kurlander as the treasurer. *Id.*

HC Advisors continued to search for funding and, through BB&T Capital Markets, the Kaplans were introduced to the Hale Partnership. *Id.* ¶ 39. The Kaplans negotiated with the Hale Partnership, which culminated in the Hale Package. *Id.* ¶ 39. Instead of bringing the proposal to HC Advisors, the Kaplans presented the Hale Package to the HC REIT Board in August 2018. *Id.* ¶ 40. Plaintiffs submitted an alternative capital proposal, the "Baker Hill Package." *Id.* ¶ 41. With one director having resigned, a deadlock between the packages was reached. *Id.* ¶ 12.

To proceed with his investment, the Hale Partnership agreed to redeem the equity interests of the Plaintiffs and Mr. Stanton, which in January 2019 was agreed upon subject to an independent investment bank's fairness opinion of the proposed redemption price. *Id.* ¶ 44. The fairness opinion resulted in a lower repurchase price, and Plaintiffs and Mr. Stanton declined to proceed with the deal. *Id.* ¶¶ 46-47.

On March 5, 2019, Elizabeth Watson, the former CFO of HC REIT, sent to Mr. Kaplan, Jr. a memorandum that she had prepared. *Id.* ¶ 50. That memorandum explained the unfavorable terms of the Hale Package. *Id.* Though Mr. Kaplan, Jr. did not forward the memorandum to the Board, on March 11, 2019 Defendant

Musil did. *Id.* ¶ 50. The next day at 10:43 a.m., Mr. Kaplan provided notice of a board meeting set for 11:15 a.m. the following day. *Id.* ¶ 51. This was about thirty-two minutes more than the minimum required by the organizational documents. *Id.* Also on March 12, 2019, Mr. Kaplan disseminated a 121-page agenda of the meeting which included terms and conditions that constituted the Hale Package. *Id.* ¶ 52-53.

All directors, except Dr. Kurlander who is a medical doctor and was performing surgery, attended the March 13 meeting. *Id.* ¶ 55. Mr. Stanton requested a continuance, which was denied. *Id.* ¶ 56. The HC REIT Board then approved, by a four to one margin, the items for consideration, which "paved the way for the Hale Package and all that goes with it," with Mr. Stanton being the only dissenter. *Id.* ¶ 57. This meant mezzanine financing at an interest rate of 14%, additional money invested in 10% Series B Cumulative Convertible Preferred Stock, money invested as common stock, and the potential for additional investments. Dkt. 1-3. The Series B Preferred Stock was made on parity with the Series A preferred stock with respect to dividends and other distribution rights. Dkt. 1-4 at 2. Mr. Stanton and Dr. Kurlander were removed as officers of HC REIT. Dkt. 1-5 at 28; Dkt. 1-7 at 2-3; Dkt. 1 ¶ 53(e) & (f). On March 14, 2019, Mr. Kaplan, Jr. notified Mr. Stanton that the management contract between HC REIT

and HC Advisors would not be renewed, "which such nonrenewal shall take effect on March 31, 2020." Dkt. 1-7 at 2.

Plaintiffs bring three counts against Defendants. In Count I, Plaintiffs petition for dissolution of the HC REIT under § 3-414 of the Maryland Code. Count II is for breach of fiduciary duty against the Independent Directors and the Kaplans (collectively the "Board Defendants"). Count III seeks declaratory judgment.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). When considering a Rule 12(b)(6) motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

## DISCUSSION

I.    Choice-of-Law

A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). Under Florida's choice-of-law principles, the law of the state of incorporation governs the liabilities of the officers or directors of a corporation. *International Ins. Co. v. Johns*, 874 F.2d 1447 (11th Cir. 1989). It is thus undisputed that HC REIT is incorporated in Maryland, and thus Maryland law governs.

## II.    Statutory Dissolution Under § 3-413 of the Maryland Code

In Count I, Plaintiffs ask the Court to dissolve HC REIT pursuant to § 3-413 of the Maryland Code. Defendants argue that the Court should abstain from resolving the issue, invoking *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), and that, alternatively, the conditions for dissolution are not satisfied.

This Court begins by noting that abstention occupies a precarious position in federal court jurisprudence. On one hand, federal courts have "a virtually unflagging obligation . . . to exercise the jurisdiction given to them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Yet, *Burford* requires a court to abstain "when exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Sabato v. Florida Dept. of Ins.*, 768 F. Supp. 1562, 1565 (S.D. Fla. 1991) (citations omitted). As such, situations warranting *Burford* abstention are extraordinary.

However, courts have routinely found that dissolving a corporation formed under state law presents such a case. *See, e.g.*, *Patel v. Oakwin Lodging Inc.*, 2008 WL 3365233, at *1 (M.D. Fla. Aug. 8, 2008) (abstaining from dissolution claim "to avoid infringing on the state's important interests in overseeing the continued existence of corporations created under its laws"); *Ives v. Advanced Broadband Solutions, Inc.*, 2004 WL 180043, at *3 (D. Md. Jan. 23, 2004) ("Abstention on *Burford* grounds in cases seeking equitable relief affecting corporations is a well recognized application of the doctrine."); *see also Friedman v. Revenue Mgmt., Inc.*, 38 F.3d 668, 671 (2d Cir. 1994) ("New York has a strong interest in the creation and dissolution of its corporations and in the uniform development and interpretation of the statutory scheme regarding its corporations."). And, beyond *Burford*, the United States Supreme Court in *Pennsylvania v. Williams* held that "[i]t has long been accepted practice for the federal courts to relinquish their jurisdiction in favor of the state courts, where its exercise would involve control of or interference with the internal affairs of a domestic corporation of the state." 294 U.S. 176, 185 (1935).

Indeed, Maryland has enacted a robust framework to govern its corporations, including detailed procedures for their dissolution. *See Md. Code Ann., Corp. & Ass'n Code* § 3-401, *et seq.* This includes extensive rules for the appointment of receivers in involuntary dissolutions; imposing liability on shareholders, officers,

and directors in dissolutions; and providing notice to creditors following dissolution. *See* §§ 3-404, -414*, -415, -419. Accordingly, it seems that Maryland has a substantial interest in a coherent judicial management of the dissolution of Maryland corporations.

While Plaintiffs are correct in pointing out that the *Burford* doctrine is narrow, they cite no examples of courts that have found the doctrine inappropriate in the dissolution context. Instead, the Court finds the reasoning of the above courts applicable here.

And, while the case law precedent supports *Burford* abstention, practical realities make abstention even more compelling. If this Court granted dissolution of the Maryland corporation, presumably the Court would be required to enjoin a state officer in Maryland and compel that officer to strike HC REIT from the Maryland rolls. Then, presumably, this Court would have to ordain and follow a detailed Maryland receivership procedure to sell the REIT's dozen or so commercial buildings, and apportion the assets of this apparently-solvent public company among its hundreds of shareholders, creditors, and lessees. This does not seem a wise jurisprudential task for a federal judge sitting 950 miles from the Maryland capital to undertake. This Court abstains under *Burford*.

III.   Breach of Fiduciary Duty Against Board Defendants

Count II of the Complaint alleges that the Board Defendants breached their fiduciary duty to Plaintiffs. Defendants argue that this claim should be dismissed because it is inappropriately filed as a direct suit, HC REIT's Articles of Incorporation limit director liability, and, even if liability is not limited in the Articles, the business judgment rule shields the directors from suit. Dkt 31 at 2–3; Dkt. 33 at 2. The Court will handle Defendants' arguments in turn.

1. Direct or Derivative Suit

A shareholder can either file a direct claim against a corporation or a derivative claim on its behalf. *See Sutton v. FedFirst Fin. Corp.*, 126 A.3d 765, 782–84 (Md. 2015). "[T]he derivative form of action permits an individual shareholder or group of shareholders to bring suit to enforce a corporate cause of action against officers, directors, and third parties where those in control of the company refuse to assert a claim belonging to it*." Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 423 (Md. 2009). One prerequisite to a derivative action is "a demand on the corporation's board of directors to pursue the claim against the offending parties or demonstrate to the court that such demand would be futile due to the conflicting interests of the members of the board." *Id.* at 423.

In contrast, shareholders can only bring a direct action against the corporation if, based on their allegations, they have "suffered an injury that is separate and distinct from any injury suffered either directly by the corporation or

derivatively by the stockholder because of the injury to the corporation." *Mona v. Mona Elec. Grp., Inc.,* 934 A.2d 450, 464 (Md. 2007) (internal citations omitted). That injury must be "personal to" the shareholder. *Id.*; *see also Strougo v. Bassini*, 282 F.3d 162, 171 (2d Cir. 2002) (applying Maryland law in noting that "[t]o sue directly under Maryland law, a shareholder must allege an injury distinct from an injury to the corporation, not from that of other shareholders.").

To be sure, federal courts interpreting Maryland law split on whether claims for breach of fiduciary duty are appropriate as direct or derivative suits. *Compare City of St. Clair Shores Gen. Emps. Ret. Sys. v. Inland W. Retail Real Estate Tr., Inc.*, 635 F. Supp. 2d 783, 798 (N.D. Ill. 2009) ("[Shareholders] lack standing to bring a direct action for breach of fiduciary duty against the [corporation's directors or officers.]"), *with Strougo*, 282 F.3d at 173 ("[T]he defendants have asserted that under Maryland law, directors and officers cannot be sued directly by shareholders for alleged breaches of fiduciary duty. We disagree."). Maryland courts have yet to stake out a clear position on this either. *See Strougo*, 282 F.3d at 173 ("Maryland case law appears to be silent on the narrow question whether shareholders may bring fiduciary duty claims directly against officers and directors."). However, it is clear that under Maryland law direct suits properly arise from allegations for breach of duties owed directly from the director or officer to the shareholder or rights that are individual to the shareholder. *Waller v. Waller*, 49

A.2d 449, 453 (Md. 1946) ("Unquestionably a stockholder may bring suit in his own name to recover damages from an officer of a corporation for acts which are violations of a duty arising from contract or otherwise and owing directly from the officer to the injured stockholder, though such acts are also violations of duty owing to the corporation."); *see also, e.g.*, *Jolly Roger Fund LP v. Sizeler Prop. Inv'rs, Inc.*, No. Civ. RDB 05–841, 2005 WL 2989343, at *5 n.12 (D. Md. Nov. 3, 2005). ("[A] suit alleging corporate malfeasance that directly results in the impairment of a common stockholder's right to vote is likely a direct suit.").

Here, Plaintiffs' claim seeks to enforce numerous rights that are personal to them. More than simple share devaluation, Plaintiffs claim that as a result of the Hale Package they have suffered a decrease in control of the various ventures. This includes Kurlander's removal from the board of directors, his removal as treasurer of HC REIT, and the nonrenewal of the management agreement between HC Advisors and HC REIT. Dkt. 1 ¶53. In short, Kurlander alleges he is blocked from future investment decisions—an injury that certainly not all shareholders suffered. While the uniqueness of the Plaintiffs' relationships with the REIT intertwines their interests closely with those of the REIT itself, the fact that other shareholders could bring share dilution claims is not dipositive. *See Shenker*, 983 A.2d at 424 ("That the plaintiff suffered his or her injury in common with all other shareholders is not determinative of whether the injury suffered is direct or indirect.").

Plaintiffs have alleged sufficient facts to establish a direct claim. They allege unique harms related to their distinct relationships with HC REIT. Accordingly, the Court will not dismiss Count II on this basis.

2. Business Judgment Rule

Defendants then invoke the business judgment rule. This rule shields corporate directors from liability when they act prudently and in good faith. *Oliveira v. Sugarman*, 152 A.3d 728, 736 (Md. 2017) (citation omitted). The rule, codified in § 2-405.1(1)(a) of the Corporations and Associations Code, requires a director to act: (1) in good faith; (2) in a manner he reasonably believes to be in the best interests of the corporation; and (3) with the care that an ordinarily prudent person in a like position would use under similar circumstances. This rule acts as a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Oliveira*, 152 A.3d at 736 (internal citations omitted). To overcome the business judgment rule's presumption, a plaintiff must adequately allege the "presence of fraud or lack of good faith in the conduct of a corporation's internal affairs[.]" *Black v. Fox Hills North Comty. Ass'n, Inc.*, 599 A.2d 1228, 1231 (Md. 1992). Furthermore, "[i]f the corporate directors' conduct is authorized, a showing must be made of fraud, self-dealing or unconscionable conduct to justify judicial review." *Id.*

But "[i]f the plaintiff demonstrates that he or she has suffered the alleged injury directly, . . . the business judgment rule does not apply." *Shenker*, 983 A.2d at 424. If a Plaintiff is alleging injuries personal to them the presumption of the rule does not apply because the "obligation of directors to perform their duties in accordance with good business judgment runs to the corporation, not directly to the shareholders." *Oliveira*, 152 A.3d at 737. As mentioned above, Plaintiffs bring a direct claim against Defendants in Count II. The Court will not dismiss Count II on this basis.

3. Exculpatory Clause

Defendants next direct the Court to an exculpatory clause in HC REIT's Articles of Incorporation. That clause provides:

> Limitation of Director and Officer Liability. To the maximum extent that Maryland law in effect from time to time permits limitation of the liability of directors and officers of a corporation, no present or former Director, officer or External Manager of the Corporation, subject to the terms of any contract between the Corporation and any External Manager, shall be liable to the Corporation or its stockholders for money damages. . . . .

Dkt. 33-2 at 16. Such a provision is valid except where (1) the directors and officers received an improper benefit, or (2) the actions, or inactions, of the directors and officers were the result of active and deliberate dishonesty and was material to the cause of action adjudicated in the proceeding. *Md. Code Ann.*

*Corps. & Ass'ns* § 2-405.2; *Md. Code Ann., Cts. & Jud. Proc.* § 5-418. Where a plaintiff fails to allege that the directors and officers received improper benefits or were deliberately dishonest, the limitation of liability provision in the corporate charter will result in a dismissal of all monetary claims filed against the directors and officers. *Hayes v. Crown Central Petroleum Corp.*, 78 F. App'x 857, 865 (4th Cir. 2003).

Here, Plaintiffs allege there was such an improper benefit and that Defendants engaged in active deliberate dishonesty. Specifically, Plaintiffs point to the independent directors' seemingly gratuitous service on the board, the short notice of the board meeting that approved the Hale Package, exploitation of Kurlander's uniquely personal relationship with HC REIT, and refusal to continue the board meeting until Kurlander was available to attend. Dkt. 1 at 20–21. But, the Court is skeptical that notice that is abrupt yet consistent with HC REIT's organizational documents, the refusal to adjust around Dr. Kurlander's surgical schedule, or the delay in disseminating the Watson memorandum or agenda rises to any sort of dishonesty or improper benefit. Further, the allegation that the Independent Directors received no payment for their services as board members does not rise to improper benefit or active and deliberate dishonesty nor would any alleged exploitation of Kurlander's personal interests in HC REIT.

In any event, the Court agrees with Plaintiffs that it is premature to decide the issue at this stage. *See Malpiede v. Townson*, 780 A.2d 1075, 1092 (Del. 2001) ("In the case of a Rule 12(b)(6) motion, [if a charter provision limiting director liability] is raised for the first time in the motion or brief in support of the motion, it is a matter outside the pleading."). As such, the Court will not dismiss the claims for money damages on this basis.

4. <u>The Merits</u>

To state a claim for breach of fiduciary duty, a plaintiff must allege that: (i) a fiduciary duty exists; (ii) a fiduciary breached that duty; and (iii) harm resulted from the breach. *Alleco Inc. v. Harry & Jeanette Weinberg Found, Inc.*, 665 A.2d 1038, 1046 (Md. 1995). Officers and directors owe fiduciary duties to the corporation and its shareholders. *Merchants Mortg. Co. v. Lubow*, 339 A.2d 664, 669 (Md. 1975). This fiduciary relationship imposes duties of care, loyalty, and good faith. *Shenker*, 983 A.2d at 419. A director must act in a manner he "reasonably believes to be in the best interests of the corporation," and "[w]ith the care that an ordinarily prudent person in a like position would use under similar circumstances." *Md. Code Ann., Corps. & Ass.* § 2-405.1(a).

The duty of loyalty requires directors to exercise independent judgment and generally avoid having a material personal interest in a transaction. *Hudson v. Prime Retail, Inc.*, 2004 WL 1982383, at *11 (Md. Cir. Ct. Apr. 1, 2004) (citation

omitted); *Shapiro v. Greenfield*, 764 A.2d 270, 282 (Md. 2000). "[D]istinct loyalty issues arise in cases where directors stand to receive benefits from a transaction that are not generally enjoyed by the stockholders, or where a director stands on both sides of a corporate transaction*." Hudson*, 2004 WL 1982383, at *12.

However, once the decision has been made to have a change-of-control transaction, the duties of the directors change. At that point the directors transition from "defenders of the corporate bastion to auctioneers charged with getting the best price for the stockholders." *Revlon, Inc. v. MacAndrews & Forbes Holdings*, Inc., 506 A.2d 173, 182 (Del.1986)  This means that "in any change-of-control situation, the common law imposes on those directors duties to maximize shareholder value and make full disclosure of all material facts concerning the merger to the shareholders." *Shenker*, 983 A.2d at 421.

Yet, while directors owe duties to the corporation and the shareholders, "they are not trustees for the individual stockholders." *Waller*, 49 A.2d at 454. Any fiduciary duty owed by directors "runs . . . to the corporation and not, at least directly, to the shareholders. *Werbowsky v. Collomb*, 766 A.2d 123, 133 (Md. 2001). In short, any action for breach of fiduciary duty by directors or officers to shareholders must allege a distinct duty was owed to the shareholder—otherwise the allegations are inappropriate for a direct claim.

Regarding the independent directors, it is undisputed that they owed duties of loyalty, care, and good faith to the corporation. Yet, the vast majority of Plaintiffs' Complaint decries the conduct of the Kaplans, not the independent directors. Plaintiffs allege that the independent directors were careless in the performance of their duties by failing to adequately vet the Watson memorandum and were content to look the other way. Dkt. 1 ¶50. These both seem founded on the mere fact that they voted for the Hale Package. Further, Plaintiffs are unable to point to benefits the directors stood to gain from the package that were not generally enjoyed by the stockholders. Indeed, presumably both would benefit from an influx of funds. Also, any allegations related to prudence of the Hale Package for "business growth and investment strategy" cannot be considered in a direct action. Dkt. 1 ¶54(c); *see Danielewicz v. Arnold*, 769 A.2d 274, 283 (Md. Ct. Spec. App. 2001) ("[A] stockholder cannot maintain an action at law against an officer or director of the corporation to recover damages for fraud, embezzlement, or other breach of trust which depreciated the capital stock or rendered it valueless.").

In terms of the outside consequences of the board's decision regarding the Hale Package—including Plaintiffs' allegations regarding loss of indirect control over HC REIT and other strategic interest in HC REIT—these do not rise to the level of a breach of any duty owed to Plaintiffs. Dkt. 1 ¶54(a), (d). The

independent directors "are not trustees for the individual stockholders." *Waller*, 49 A.2d at 454. The personal financial consequences of the board's decision on the plaintiffs do not provide a basis for a breach of fiduciary duty against the independent directors. Allegations that the directors are passive are insufficient. Plaintiffs do not plausibly allege the independent directors violated fiduciary duties. This would require allegations about duties owned personally to the Plaintiffs, which Plaintiffs have not presently argued.

The same can be said of Plaintiffs' claims against the Kaplans. Again, the Kaplans as director and officer owe duties of loyalty, care, and good faith to the corporation and shareholders. *Lubow*, 339 A.2d at 669. However, as with the independent directors, these duties are only owed to shareholders through the corporation and not individually to shareholders. *See City of St. Clair Shores Gen. Emps. Ret. Sys.*, 635 F. Supp. 2d at 798 (holding that, under Maryland law, shareholders cannot bring direct claims for breach of fiduciary duties against the directors of a corporation for duties owed by the directors to the corporation and shareholders). As such, allegations of "personal embarrassment, family frustration, business strain, and potential liability" and "[failure] to properly respond to the Hale Package and the Baker-Hill Package" are not sufficient to state a claim for breach of duty owed to the Plaintiffs as individual shareholders. Dkt. 1 ¶¶ 70, 72.

Even in terms of the duty of loyalty, Plaintiffs have failed to allege that the Kaplans stand to receive benefits from the Hale Package "that are not generally enjoyed by the stockholders." *Hudson*, 2004 WL 1982383, at *12. In fact, Kaplan and Kaplan Jr. both suffered the similar negative consequences as the Plaintiffs because they all owned the exact same percentage of HC Advisors—and therefore lost financial and strategic interests in HC REIT as a result of the Hale Package—as the Plaintiffs. Accordingly, Plaintiffs have not alleged sufficient facts to state a claim for breach of fiduciary duty.

This is especially true if one examines the, as-filed by Plaintiffs, Watson Memorandum—rather than merely looking to the Complaint's interpretation of it. Dkt. 1-1. A fair reading of the Memorandum shows the incumbent, pre-Hale entity to be in poor shape financially and potentially could indicate a need for change and an injection of "new blood."

Even if this is a "change-of-control" situation where "corporate directors owe their shareholders fiduciary duties of candor and maximization of shareholder value," Plaintiffs have not pled sufficient facts to state a claim that these duties have been breached. *Shenker*, 983 A.2d at 421. Beyond allegations of their own personal strategic and financial benefits associated with the competing Baker-Hill plan, Plaintiffs have not alleged that Hale Package failed to maximize overall shareholder value or that the directors failed to disclose any material facts. As

such, even if this were a situation where *Revlon* applies—a fact that is not clear from the face of the Complaint itself—Plaintiffs have still pled insufficient facts for a breach of fiduciary duty.

In sum, Plaintiffs fail to allege sufficient facts rising to breaches of fiduciary duty by Kaplan, Kaplan Jr., or the independent directors, Bill Fields, Leo Kiely, and Scott Musil. As such, Plaintiffs' claims for breach of fiduciary duty must be dismissed without prejudice.

IV.    Declaratory Judgment

Count III seeks judgment declaring that, among other things, the Hale Package is not in the best interest of HC REIT and would cause a unique and deliberate hardship on Plaintiffs, that the circumstances of the March 13 board meeting were "deliberately calculated to exclude" Kurlander from participation, and that "the status quo ante must be maintained until such time as an appropriate fiduciary . . . can assume responsibility for the orderly dissolution of HC REIT." Dkt. 1 ¶ 23-24.

In evaluating the appropriateness of declaratory judgment, a court should consider whether "declaratory relief would (1) serve a useful purpose in clarifying and settling the legal relations in issue, and (2) terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Traturyk v. Western-Southern Life Assur. Co.*, 6:15-cv-1347-Orl-40TBS, 2016 WL 727546, at

*3 (M.D. Fla. Feb. 24, 2016). However, since the Complaint in this case was filled there have been a number of developments that have potentially affected the "status quo." Namely, this Court denied Plaintiffs' motion for a temporary restraining order to prevent consummation of the Hale Package (Dkt. 5), the Hale Package was adopted, and new directors have assumed control of HC REIT under the terms of the Hale Package. Dkt. 31 at 23. In light of these developments, Plaintiffs' request to maintain the status quo is seemingly moot. Any request for a declaratory judgment would need to be updated to reflect these new facts in order to be decided upon. As such, the Court takes no position currently on the appropriateness of a declaratory judgment in this case and dismisses the now-outdated Count III without prejudice.

## V. Attorney's Fees

Defendants also move the Court to strike Plaintiffs' request for attorney's fees. Dkt. 31 at 24. Any claim for fees in an amended pleading should expressly state the statutory or contractual entitlement to same. *See Euro RSCG Direct Response, LLC v. Green Bullion Fin. Servs.*, 872 F. Supp.2d 1353, 1364 (S.D. Fla. 2012) (granting motion to strike attorneys' fees request where plaintiff failed to articulate a statutory or contractual basis for attorneys' fees); *see also JTH Tax, Inc. v. Whitaker*, No. 2:07-cv-170, 2007 WL 2821830, at *3 (E.D. Va. 2007).

## CONCLUSION

The Court grants Defendants' Motions to Dismiss (Dkts. 31, 32, 33) as to Counts II and III of the Plaintiffs' Complaint without prejudice and abstains on Count I under the *Burford* doctrine. Plaintiffs shall have twenty (20) days to file an amended complaint consistent with this Order.

**DONE AND ORDERED** at Tampa, Florida, on August 21, 2019.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

COPIES FURNISHED TO:
Counsel of Record

23